270

SEARS, ROEBUCK & CO.

v.

PIERRE BONSANT

April 30, 1974

*Lemelin & Cloutier (Mr. Raymond A. Cloutier* orally) for the plaintiff.

*Bussiere & McHugh (Mr. Kenneth R. McHugh* orally) for the defendant.

DUNCAN, J  By this action of replevin, the plaintiff Sears, Roebuck & Co. repossessed on May 31, 1969, certain household furnishings previously sold under conditional sales agreements to defendant Bonsant. RSA ch. 536. RSA ch. 536-A (Supp. 1973), effective August 29, 1973, which replaced RSA ch. 536 is not involved. Trial by jury before *Batchelder,* J., resulted in a directed verdict for the plaintiff.

During 1967 and 1968 the defendant charged various

purchases aggregating $825.90 to the account in question. After paying $272 in sixteen monthly payments of $17 each on this account, he defaulted. There was evidence that when he ceased payment he was in the process of preparing a petition in bankruptcy. Although the testimony was in conflict as to whether Sears communicated with defendant regarding the arrearage prior to repossession, it is clear that no allocation of payments statement under RSA 399-B:6 was then provided to the defendant. After repossession, defendant's attorney requested such a statement, and was provided with copies of the original sales agreements. By letter dated June 24, 1969, defendant's attorney renewed the request for an allocation statement, but received no response. One issue presented is whether certain handwritten figures appearing on the copies of the agreements furnished to defendant's counsel qualify as the statutory allocation statement.

The trial court found the plaintiff had "substantially complied" with RSA 399-B:6 and granted plaintiff's motion for a directed verdict at the close of the evidence. Since defendant sought damages rather than an opportunity to complete purchase of the goods as provided by this statute, the court ruled that there was "no evidence upon which the jury could return a verdict in money damages without speculating." The questions presented by the defendant's exceptions to the entry of a directed verdict were transferred to this court by the presiding justice.

The defendant does not question the plaintiff's rights under the conditional sales agreements, but argues that the requirements of RSA 399-B:6 were not met, and that it was error to direct a verdict for the plaintiff. The defendant further claims that the question of damages should have gone to the jury.

RSA 399-B:6 provided in pertinent part as follows:

> "Prior to or after any action by the seller or his agents to repossess consumer goods under the terms of any such conditional sales contract or contracts involving both previous and subsequent purchases which have not been fully paid, the seller must retroactively allocate all payments received

under the contract or contracts to the various purchases in the same proportion or ratio as the original cash prices of the various purchases bear to one another. However, the amount of initial or down payment involved in each purchase shall be allocated in its entirety to such purchase. The result of such allocation shall be reported to the buyer who has the right to complete payment on any of the purchases consolidated in the conditional sales contract within fifteen days from receipt of the allocation report from the seller. Any purchases upon which the payments have been so completed are exempt from repossession by the seller . . . ."

The defendant argues that the words "any action . . . to repossess" in the first line of the section should be interpreted to mean any notice, demand, or repossession warning, rather than a legal "action" such as replevin, and that he was therefore required to be given an allocation statement before repossession was taken on the replevin writ. The original wording of House bill 735, which became RSA 399-B:6, was amended by adding the words "or after" to the first sentence of the section. N.H.H.R. Jour. 1084-85 (1965). This clearly indicated, contrary to the defendant's contention, that the legislature intended that the allocation of payments could be made either before or after repossession.

This legislative history also accounts for the inconsistent language providing that "[a]ny purchases upon which payments have been so completed are exempt from repossession by the seller." RSA 399-B:6. Since the amendment adding "or after" to the bill indicated that the legislature intended to allow the creditor to repossess first, and then allocate the payments, the exemption provision must be construed to permit the debtor to redeem goods already repossessed, by completing payment of the allocated balance.

The defendant argues that the notations on the contract copies furnished his attorney did not satisfy the requirements of the statute. An employee of the plaintiff testified that the handwritten figures represented allocations of payments more favorable to the defendant than those required by the statute. The defendant says that since the figures were in

no way identified, he could not know their meaning, favorable or unfavorable. In no place on the copies appeared any statement that defendant could complete payment on a specified item for a specified amount. On the contrary, the figures on the copies were in no way identified, and the ruling of the court that the statute was "substantially complied with" must be set aside.

"Disclosure statutes are intended to inform the uninformed . . . ." *American Home Improvement Co. v. MacIver,* 105 N.H. 435, 438, 201 A.2d 886, 887 (1964). It was there decided that under RSA 399-B:2, recovery should be denied on a home improvement agreement where the credit information was found "not even a token compliance with the statute." *Id.* at 437, 201 A.2d at 887. The "obvious purpose" of RSA 399-B:2 was held to be to place the burden on the lender to inform the borrower in writing of the finance charges he was to pay. In *First Federal Savings & Loan Association v. LeClair,* 109 N.H. 339, 253 A.2d 46 (1969), where a "finance charge" of "8½%" was stated on the note in question, but the method of computation was not identified, the notation was held insufficient to satisfy the requirement of RSA ch. 399 that a "clear statement in writing setting forth finance charges . . . ." be provided. RSA 399-B:2.

Similarly the obvious purpose of RSA 399-B:6 now under consideration was to place the burden on the creditor seeking to replevy consumer goods sold under conditional sales agreements to inform the buyer in writing of the amount required to complete payment for each purchase. Both of the cited cases held that violation of the provisions of RSA ch. 399-B precluded enforcement of the agreement. *First Fed. Savings & Loan Ass'n v. LeClair,* 109 N.H. 339, 341, 253 A.2d 46, 47 (1969); *American Home Improvement Co. v. MacIver,* 105 N.H. 435, 439, 201 A.2d 886, 888 (1964). We hold that plaintiff in the case at bar was not entitled to prevail in its action, because of its failure to comply with RSA ch. 399-B:6.

The remaining question is that of the sufficiency of the evidence to permit submission to the jury of the issue of defendant's damages. Under RSA 536:6 in a replevin action "[i]f the defendant shall prevail . . . he shall have judgment for the return of the goods, with such further damages as

shall be awarded to him. Where none of the property remains in the hands of the plaintiff, judgment may be had for the value." *See Am. Steel Co. v. Wooster,* 95 N.H. 179, 59 A.2d 341 (1948); *National Shawmut Bank v. Cutter,* 105 N.H. 206, 208, 196 A.2d 706, 708 (1963).

The defendant rightly claims that the allegation of value in the plaintiff's writ is sufficient evidence of value of the goods to go to the jury. "The allegation [of value in a replevin writ] is undoubtedly competent evidence upon the trial as an admission of value by the plaintiff . . . . What weight shall be given to the admission, is a question for the jury under all the circumstances under which it was made." *Briggs v. Wiswell,* 56 N.H. 319, 321-22 (1876); *accord, Bernhardt v. Cappelletti,* 104 Conn. 501, 133 A. 576 (1926). *See also Chernick v. National Surety Co.,* 50 R.I. 419, 148 A. 418 (1930). Other evidence in the record would permit a determination of the value of the defendant's interest in the goods. Thus the case should have been submitted to the jury on the question of the value of his equity. *National Shawmut Bank v. Cutter,* 105 N.H. 206, 196 A.2d 706 (1963); *Canney v. Emerson,* 82 N.H. 487, 136 A. 139 (1927).

*Exceptions sustained; new trial.*

KENISON, C.J., did not sit; the others concurred.